CALDWELL *v.* PAPENDELL.

BROKERS—COMMISSIONS.

> Under contract providing that inventor would pay broker commission on sale of patent on oil burner if sold for certain price by certain date, broker was not entitled to commission where corporation was formed to manufacture oil burners after expiration of contract, inventor receiving stock for his patent, although broker first introduced inventor to parties who later became interested in corporation, especially in absence of testimony as to value of stock so received.

Appeal from Wayne; Runnels (Herbert W.), J., presiding. Submitted October 8, 1930. (Docket No. 27, Calendar No. 35,049.) Decided December 2, 1930.

Bill by Wilfred F. Caldwell and another against Robert Papendell for discovery and accounting. From decree dismissing bill, plaintiffs appeal. Affirmed.

*Younglove & Chockley,* for plaintiffs.

*Albert G. Goetz (Fred C. Weyher,* of counsel), for defendant.

BUTZEL, J. Robert Papendell, defendant and appellee, was the inventor of an oil burner for which United States letters patent were issued to him. He employed as brokers for the sale of his invention Wilfred F. Caldwell and Robert H. Evans, plaintiffs and appellants under a written contract which was twice renewed. The last renewal was embodied in a new contract similar to the first one entered into

except as to date and the time of expiration. It is referred to in the record as Exhibit 1, and reads as follows:

"The undersigned inventors-patentees, and owners, hereafter known as party of the first part, of an improved oil burner for domestic heating to be designated as 'The Papendell Oil Burner,' has this day commissioned and appointed Robert H. Evans and Wilfred F. Caldwell, hereafter known as party of the second part, representatives, and agents to find, and to sell to acceptable purchaser, or purchasers, for not less than ($62,500) sixty-two thousand five hundred dollars, all or any part of our interests in the above mentioned 'Oil Burner' with the understanding and agreement that party of the first part will give and pay to party of the second part a sum equal to twenty (20%) per cent. of the amount received up to and including sixty-two thousand five hundred dollars ($62,500), and an additional amount of one-half of the amount received over and above $62,500.

"The party of the first part reserves the right to sell or dispose of all or any part of the above mentioned oil burner to any party or parties providing that they are not the party or parties that party of the second part are dealing with. It is further agreed that should party of the first part sell or dispose of all or any part of the above mentioned oil burner during the period of this agreement that party of the second part will have no claims for commission whatsoever or any claim for expense or labor that they may have expended up to the time of the sale or disposal.

"Furthermore it is agreed that party of the second part cannot transfer this agreement to any other party or parties without the consent in writing of the party of the first part.

"This agreement applies to any sale made in the United States of America or Canada and is for a

period of (60) sixty days from date of this agreement February 15, 1927.

"It is further agreed that the party of the second part will not be paid commission until the entire amount of the sale price has been paid to party of the first part.

"Written and signed in duplicate this the 18th day of February, 1927.

"ROBERT PAPENDELL,

"ROBT. H. EVANS,

"W. F. CALDWELL.

"H. L. EMHOFF, Witness."

Prior to the expiration of the time provided for in the contract, plaintiffs introduced defendant to E. Raymond Field and Horace M. Jerome who were interested in a new boiler which they believed to be very valuable. They went to Ann Arbor with defendant, who was an experienced heating engineer. He gave much of his time and effort to improving the boiler. In June, 1927, the boiler was perfected, but it was a year later before difficulties with the burner were overcome. The testimony is quite conclusive that, irrespective of the value of the burner, which at first had serious defects, there was a willingness to pay defendant for his services in perfecting the boiler and a desire to employ him in connection with the business that was organized. On June 7, 1927, after the expiration of the time of performance by plaintiffs as set forth in Exhibit 1, a corporation was organized by Field, Jerome, one Murray, and defendant, under the laws of Michigan. Its articles provided for 20,000 shares of no par stock, the price of which was fixed at $1 each. The capital was paid in as follows: $10,000 in cash and $10,000 in property consisting of patents on the oil burner and patents pending and manufacturing

rights covering boilers, drawings, blueprints, and model boiler. Five thousand shares of stock were turned over to defendant, in consideration of his patents, and the remaining 15,000 to the others in consideration of the cash, patents pending, and manufacturing rights covering the boiler, etc. Thereupon plaintiffs demanded 20% of defendant's stock as payment under their brokerage contract. Upon defendant's refusal to comply with this demand, plaintiffs filed a bill of complaint alleging that defendant had conspired with Field and Jerome in organizing the corporation, and that the corporation known as the "Field-Jerome Laboratories, Inc.," had been organized for the sole and only purpose of cheating, hindering, and delaying plaintiffs in and from collecting their commissions. They asked that 20 per cent. of the consideration, or 1,000 shares of the stock received by defendant, be turned over to them. Upon a hearing of the case, it was admitted that plaintiffs had first introduced defendant to Field and Jerome. It was further shown that the corporation was not organized until after the expiration of the 60-day period set forth in Exhibit 1.

The contract provided only for compensation if defendant received a minimum $62,500. Plaintiffs gave no testimony to show that the 5,000 shares of stock received by defendant were worth more than the value placed on them in the articles of association. While the corporation was legally formed and is a separate entity, and only can be considered as such, in some respects it resembled a copartnership in which defendant contributed his invention and the others their invention together with $10,000 in cash to finance the business. This was far from selling the patent for the minimum amount nec-

essary in order to entitle plaintiffs to collect a commission. We need not consider the other defenses raised. The circuit judge properly found that there was no fraud, conspiracy, concealment, or bad faith whatsoever, and dismissed the bill.

The decree is affirmed, with costs to defendant.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.